**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY ROYSTON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:18-CV-01697 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| LOUIS DEJOY, | ) | |
| United States Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Timothy Royston brings this employment discrimination lawsuit against his former employer, the United States Postal Service.[1] R. 1, Compl.[2] Royston claims that the Postal Service interfered with his right to take leave under the Family and Medical Leave Act (commonly referred to as the FMLA) and retaliated against him for exercising his FMLA rights. Royston also argues that the Postal Service discriminated against him on the basis of his disability, in violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* The government has moved for summary judgment on all claims. R. 63. For the following reasons, the government's motion is granted.

---

[1]The Court has federal question jurisdiction under 28 U.S.C. § 1331. The formal defendant is the Postmaster General, who is now Louis DeJoy. The Clerk's Office shall insert him as the new sole defendant. Fed. R. Civ. P. 25(d).

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number if applicable.

## I. Background

In deciding the Postal Service's summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party, Timothy Royston. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Having said that, when Royston fails to present facts properly under Local Rule 56.1, the Court may deem the Postal Service's facts to be admitted and set aside Royston's assertions. *See Delapaz v. Richardson*, 634 F.3d 895, 899–900 (7th Cir. 2011) (describing the importance of Local Rule 56.1 and the trial court's entitlement to rely on it). The facts below are undisputed unless otherwise noted, in which case the evidence is viewed in Royston's favor.

For almost 30 years, Timothy Royston worked as a general expeditor clerk at the USPS Busse Processing and Distribution Center (PDC) in Elk Grove Village, Illinois. R. 65, DSOF ¶ 1; R. 73, PSOAF ¶ 1.[3] Royston's immediate supervisor was Forrest Norvell, the supervisor of distribution operations at PDC. DSOF ¶ 5. Norvell was in charge of approving or disapproving Royston's requests for annual leave (vacation or personal days). *Id.* ¶ 17. But the person responsible for authorizing employees' sick leave requests was Martha Womack, who served as the "leave control" supervisor at the relevant times. DSOF ¶¶ 6, 17.[4] Womack also exercised general oversight of

---

[3]Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for the Postmaster General's (Defendant's) Statement of Undisputed Facts (R. 65); "PSOAF" for Royston's (Plaintiff's) Statement of Additional Facts (R. 73); Pl's. Resp. DSOF for Royston's Response to the DSOF (R. 72); and "Def's. Resp. PSOAF" for the Postmaster General's response to Royston's Statement of Additional Facts (R. 81).

[4]Royston says that the paragraph of the DSOF describing Womack's job duties is "partially controverted," but he does not explain what part he means to controvert, and nothing

employees' leave use. *Id.* She had been brought to the Busse facility to help address a problem with employees' excessive use of sick leave. Pl's. Resp. DSOF ¶ 6 (citing R. 75-2, Pl's. Exh. 2, Bernie Hudson Dep 116:15–21); *see also* R. 66-1 at 90, Def's. Exh. 6, Womack Dep. 13:19–14:13. The department that processed and approved FMLA leave requests was the Human Resources Shared Services Center in Greensboro, North Carolina. DSOF ¶¶ 8–10. Specialists at the Center decide on employees' FMLA leave requests, and the employees' immediate supervisors can then find out whether a given employee has been approved for FMLA coverage by looking them up in the Postal Service's Enterprise Resource Management System. DSOF ¶ 10.

In 2016, Royston was diagnosed with bradycardia, a heart condition which affects the heartbeat and blood pressure. DSOF ¶ 7; PSOAF ¶ 22. Royston spent several days in and out of the hospital receiving treatment for his bradycardia in October 2016. DSOF ¶ 7. When he was released, Royston was told that his heart had stabilized, he did not need medication, and he did not have any long-term heart condition; he was, however, told to wear a heart monitor for one month to ensure that he remained stable. *Id*; PSOAF ¶ 22. Royston requested and received FMLA coverage for his heart condition. DSOF ¶ 8. He was approved to take leave from October 26 through November 26, 2016. *Id.*

---

in his responsive paragraph disagrees with the description. Pl's. Resp. DSOF ¶ 6. It simply provides additional context. *Id.* This is true of many of the Plaintiff's responses to the DSOF. As a general rule, if the Plaintiff purports to partially controvert a paragraph of the DSOF but does not, in fact, contradict any of the facts in that paragraph, the DSOF paragraph will be deemed admitted. The Court will discuss a handful of additional purported "controversions" on important points.

In 2016, and into 2017, Royston was also providing care for his father, who was terminally ill from cancer. DSOF ¶ 9; PSOAF ¶¶ 9, 39. Specifically, on November 21, 2016, Royston's request for FMLA leave to care for his father was approved for intermittent leave, as needed. DSOF ¶ 9. The notice granting him this leave did not specify the dates on which he would take this leave. *Id.*

Royston's employment was governed by not just the Family and Medical Leave Act, but also by the USPS's Employee and Labor Relations Manual and the USPS's leave policies. DSOF ¶¶ 11–20. Under the Manual, Postal Service employees may take up to 80 hours of their accrued sick leave as "Sick Leave Dependent Care" to care for a sick family member. DSOF ¶ 12. An employee who wants to use sick leave must submit a PS Form 3971 to his supervisor, except in cases of emergencies or sudden illness. DSOF ¶ 13. If the employee will be absent for three or fewer days, the supervisor may accept the employee's explanation of his absence on its own or may require the employee to provide additional documentation in support of the absence for one of two reasons. DSOF ¶ 14. First, an employee on restricted sick leave—one who has abused sick leave in the past—must always provide documentation; second, a supervisor can also require documentation if the supervisor "deems documentation desirable for the protection of the interests of the Postal Service." *Id.*; Def's. Exh. 11, Manual 513.361, 513.391. Royston was never placed on restricted sick leave. PSOAF ¶ 25.

When a Postal Service employee takes FMLA leave, the employee must concurrently take a specific type of *Postal Service* leave: annual leave, sick leave, or leave

4

without pay. DSOF ¶ 15. Even if the employee's FMLA leave has been approved, the employee must abide by Postal Service requirements for requesting and obtaining sick leave if the employee wishes to use sick leave concurrent with FMLA leave. *Id.* ¶ 18. Specifically, if the supervisor requires documentation in support of the request, then the employee must submit documentation showing the inability to work during the period of requested absence. *Id.* ¶ 19. If an employee requests sick leave but does not produce the required documentation to support the request, then the requested leave may be changed to annual leave or, alternatively, leave without pay. DSOF ¶ 20. According to Royston, this change should only happen with the agreement or approval of the employee; for this proposition, he cites the depositions of Forrest Norvell and Victor Ford (Ford was the Manager of Distribution Operation who supervised both Norvell and Womack, R. 75-3, Pl's. Exh. 3, Ford Dep. 15:9–16:18). Pl's. Resp. DSOF ¶¶ 14, 20.

At the heart of this case are four specific dates for which Royston wanted to use FMLA and Postal Service sick leave, concurrently.[5] These dates are the ones Royston would eventually list on his Equal Employment Opportunity Complaint of Discrimination in the Postal Service, R. 67-1 at 55, and in his Complaint in this case, R. 1. First, on December 28, 2016, Royston submitted a Form 3971 requesting a full day of sick leave on January 17, 2017, specifying that he wanted to take "Sick

---

[5]At times in his summary judgment briefing and fact statements, Royston tries to broaden the universe of his leave requests and denials for this case. *See, e.g.*, PSOAF ¶¶ 7, 19, 20, 40; Pl's. Br. at 8 But he does not make specific enough assertions to identify these attempts. This issue will be discussed further in the Analysis section below.

Dependent – Care FMLA" leave. DSOF ¶ 21.[6] According to Royston, Womack told him that she would not approve this leave request because he was not approved for FMLA. DSOF ¶ 22. Royston says that he told both Womack and Norvell that he was approved for FMLA, but this protestation did not help, and Womack refused to approve the request. *Id.* Womack does not remember this conversation with Royston. *Id.*[7] Royston's absence on January 17, 2017 was initially classified as a "leave without pay" (LWOP) absence and he was not paid for it. *Id.* (This classification did not stick, as will soon be discussed.)

Second, on January 17, 2017, Royston requested another full day of sick leave concurrent with FMLA leave, for February 3, 2017. DSOF ¶ 23. Norvell approved this

---

[6]Royston purports to controvert Paragraphs 21–24 of the DSOF. Pl's. Resp. DSOF ¶¶ 21–24. But he does not actually cite to any record evidence that contradicts these paragraphs, which present a clear, accurate account of his leave requests and how they were processed. Instead, he provides context that he apparently deems relevant to these requests, discussing, for example, his attempts to convince Womack that she should grant him the leave (¶ 22) and the amount of sick leave he had left (¶ 23). This information would have been more appropriately included in the PSOAF. In any event, it will be discussed, to the extent relevant, in the Analysis section.

[7]Royston also contends that Manuel Lazu, a union steward, spoke on his behalf to Womack and to the FMLA coordinator in Greensboro. Pl's. Resp. DSOF ¶ 22. But Royston testified in his deposition that Lazu had this conversation with Womack while Royston was not in the room, and that Lazu told Royston about it later. R. 66-1 at 17, Def's. Exh. 3, Royston Dep. at 26:12–27:4, 61:1–15. Ordinarily, the purported Womack statements might be allowable as substantive evidence as a party-admission, because Lazu would testify about it at trial (so the evidence is reducible to a form of admissible evidence at trial). But the problem is that Lazu himself, in his deposition, denied speaking with Womack on Royston's behalf, or calling the FMLA coordinator with Womack or Royston, because Lazu was a representative in a different union from Royston. R. 75-10, Pl's. Exh. 10, Lazu Dep. 70:16–71:17 (including: "I only represent mail handlers, I don't represent clerks" and "I told him that he needed to talk to his union"), 72:16–73:3 (including: "it's not my business to speak on behalf of a clerk because I am not part of the clerk union"). The upshot is that, at a trial, Royston would be reporting what *Lazu* said Womack said, and that first step is inadmissible hearsay and does not qualify as a party-admission (or any other hearsay exemption or exception).

request as "non FMLA" annual leave, and the day was indeed charged to Royston's annual leave balance. *Id.*

Third, back on December 28, 2016, Royston had also requested a full day of "Sick Dependent Care—FMLA" for February 6, 2017. DSOF ¶ 24. Norvell approved this request as non-FMLA, and when Royston took the leave, it was charged to his sick leave balance. *Id.*

Finally, on February 14, 2017, Royston requested a full day of FMLA and sick leave to be used March 20, 2017. DSOF ¶ 25. Womack denied this request based on a lack of supporting documentation. *Id.* (This denial too did not stick—more to come.)

Royston also received some form of sick leave for dates including February 24, March 27, April 3, 10, and 24, May 8, 22, and 26, and June 2, 5, and 6, 2017. DSOF ¶ 26.[8]

In response to the denials of his leave requests for January, February, and March 2017, Royston filed a series of union grievances. DSOF ¶ 27. He filed one directed at the first three dates, and another as to the March date. *Id.* He specifically complained that he had requested Sick Leave Dependent Care for January 17, 2017, but it had been classified as LWOP. *Id.* He also complained about the denial of his request for March 20, 2017. *Id.* On March 9, 2017, the Postal Service and Royston's union settled his grievances. *Id.* ¶ 28. Under the terms of the settlement, the January

---

[8]Royston purports to controvert Paragraph 26 of the DSOF, but again, provides no actual record cite to contradict this clear factual assertion, so the paragraph is deemed admitted. Pl's. Resp. ¶ 26.

17 leave was converted to "Sick Leave Dependent Care," rather than LWOP. *Id.* ¶ 29. It was also agreed that Royston could re-submit his request for leave on March 20, and it would be approved, which is what ultimately happened. *Id.* ¶ 30.[9]

Royston was never disciplined or suspended during his long career with the Postal Service. DSOF ¶ 31. Although he asserts that his treatment, in terms of how his leave requests were handled, amounted to a form of discipline, he does not otherwise contradict this assertion. Pl's. Resp. DSOF ¶ 31.

On March 7, 2017, Royston applied for immediate retirement. DSOF ¶ 32. About six weeks later, he changed his retirement date from April 28 to August 31, 2017. *Id.* On August 30, 2017, he retired. *Id.* ¶ 33. In his deposition, Royston stated that he retired because he felt he was being harassed at work through the denials of his FMLA requests. *Id.* ¶¶ 34. He said that coworkers who were aligned with management tried to bait him with questions about his FMLA leave, and also harassed him with yelling, swearing, and name-calling. *Id.* ¶¶ 29–30. But he was unable to cite any specific incidents or individuals related to this alleged harassment. *Id.* ¶ 35.

On May 18, 2017, Royston filed a formal Equal Employment Opportunity Complaint against the Postal Service. DSOF ¶ 36. This complaint alleged that he had

---

[9]Royston purports to controvert the Postal Service's account of his grievances' resolution, but in fact presents no facts that contradict the account. Pl's. Resp. DSOF ¶¶ 28–30. He asserts that he did not himself agree to the resolution of the grievance, *id.* ¶ 28, but it was a *union* grievance and the defense accurately explained that the settlement was between the union and the Postal Service. He also asserts, "Plaintiff does not know for sure that all of his issues in the grievance was resolved but he believes it wasn't," with no record citation for this proposition. *Id.* This case has progressed too far for the Plaintiff to rely on speculation. Royston also notes that he remembers not being paid for Thanksgiving, *Id.* ¶ 29, but Thanksgiving is not at issue in this case, *see generally*, Compl.

been improperly denied sick leave requests after being approved for FMLA for dependent care, and that he had been retaliated against and that his leave was improperly changed from sick to annual leave. *Id.* The Postal Service's EEO office investigated his allegations but decided in the Postal Service's favor. *Id.* ¶¶ 37–38. Royston timely filed this lawsuit on March 7, 2018. Compl.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the

adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Royston's claims can be divided into two categories: claims related to the FMLA, and claims related to his alleged disability. First, he claims that the Postal Service interfered with his use of FMLA leave. Compl. ¶¶ 33–45. Next, he claims that he faced retaliation for exercising his FMLA rights. *Id*. ¶¶ 46–60. He also brings a disability discrimination claim, *id*. ¶¶ 61–77, and a disability retaliation claim, *id*. ¶¶ 78–85, which are properly brought under the Rehabilitation Act. R. 14 (minute entry noting the parties' agreement that the Plaintiff will rely on the Rehabilitation Act instead of the Americans with Disabilities Act, which he cited in his Complaint). The Plaintiff asserts, in his response to the Defendant's Statement of Material Fact, that his Complaint included more allegations than these, but he does explain this assertion further other than to cite to the entire Complaint. Pl.'s. Resp. DSOF ¶ 41. He also does not develop any other claims in his brief. So the Court will limit its analysis to the four claims summarized in DSOF ¶ 41 and briefed by the parties.

On that note, it is worth pausing to address the problems with the Plaintiff's Rule 56.1 Statement of Additional Fact, and his Response to the Defendant's Statement of Material Fact. The Postal Service argues that Royston has failed to comply with Local Rule 56.1, such that many of his additional statements of fact should be ignored, and many of the government's fact statements should be deemed admitted

10

R. 80, Reply at 1–3. Local Rule 56.1 requires a party opposing a summary judgment motion to file, in response to the movant's statement of material facts:

> a concise response to the movant's statement that shall contain:
>
> > (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
> >
> > (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. ….

Local Rule 56.1(b)(3). The Postal Service points out numerous deficiencies with the Plaintiff's fact statements: they rely solely on his complaint, they contain argument, and in the Response to the DSOF, they are not actually responsive. Def's. Reply at 2–3. It is correct that Royston's Statement of Additional Facts and his Response to the Defendant's Statement of Material Facts extensively violate Local Rule 56.1, and for that matter, Federal Rule of Civil Procedure 56(e). The violations have been discussed when relevant in the Background section and will be explored further as necessary in the Analysis.[10]

---

[10]At least seven paragraphs in the Plaintiff's Statement of Additional Fact rely solely on the unsworn Complaint, so the Court disregards them entirely. PSOAF ¶¶ 4, 5, 32, 34–37.

11

Still, the Court will try to reach the merits of the issues whenever reasonably possible. "The decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion," and a district court can appropriately "overlook … technical failures in a motion for summary judgment where the motion provided ample notice of the relevant facts and law." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (cleaned up).[11] Viewing the facts in the light most favorable to Royston, he has nevertheless failed to offer facts that would allow a reasonable jury to find in his favor.

## A. FMLA Interference

The Family and Medical Leave Act (FMLA) protects certain employees' right to take up to 12 weeks of leave in a year to deal with their own or their family members' medical or caregiving needs, without fear of losing their job. 29 U.S.C. §§ 2612, 2614; 29 C.F.R. 825.220(a). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the statute. 29 U.S.C. § 2615; *see also Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015). As the language of the statute makes clear, interference is not limited to the denial of leave. "Interference also encompasses using the taking of FMLA leave as a negative factor in employment actions and discouraging an employee from using such leave." *Preddie*, 799 F.3d at 818 (cleaned up).

---

[11]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

For example, if an employee is told explicitly that he "can't take off" because he has used too much leave—even though he has FMLA leave remaining—*and* there is evidence that he in fact did not take leave because of this discouragement, he may be able to show interference, even though he was not explicitly denied leave. *Id.*

To succeed on a claim for FMLA interference, the employee must show the following: (1) the employee was eligible for FMLA protection; (2) the employer was covered by the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee provided sufficient notice of his intent to take FMLA leave; and (5) the employer denied the employee FMLA benefits to which he or she was entitled. *Pagel v. TIN, Inc.*, 695 F.3d 622, 627 (7th Cir. 2012). On top of all those elements, the employee also must show that the FMLA violation caused him or her actual prejudice (that is, harm). *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). The Postal Service concedes that Royston can establish the first four elements of an FMLA interference claim. Def's. Br. at 15. The dispute in this case is over the fifth element—whether the government denied FMLA benefits to which Royston was entitled—as well as the additional requirement of prejudice to Royston. As explained next, even viewing the evidence in the light most favorable to Royston, he simply has not established a dispute of material fact over whether the Defendant denied him his FMLA benefits. There is also insufficient evidence to suggest that he suffered any prejudice as a result of the denial.

### 1. Alleged Denial of FMLA Benefits

Leave requests for four individual dates are at issue in this case: January 17, February 3, February 6, and March 20, 2017. Compl. ¶¶ 16–27. Ultimately, Royston was able to take all four of those days off and was paid for them. DSOF ¶¶ 23, 24, 29, 30. His FMLA Interference claim is grounded in the *classification* of those days off: he wanted all four of those days to be classified as FMLA Sick Leave Dependent Care, but some were classified as annual leave and not specifically as "FMLA." *Id.* ¶¶ 21, 23, 24, 27, 29, 30. But the FMLA's protections are not so specific. The FMLA protects an employee's right to take off 12 weeks of leave within a 12-month period and return to his job. 29 U.S.C. §§ 2612, 2614. The FMLA in fact *explicitly authorizes* employers to require their employees to use their "accrued paid vacation leave, personal leave, or medical or sick leave" concurrently with FMLA leave. 29 U.S.C. § 2612(d)(2)(B).

Royston lodges many complaints against his employer's application of its leave policies to him. Pl.'s Br. at 5–8. But it is not necessary to address those arguments, because they are irrelevant to an FMLA interference claim. The statute entitles him to take a certain amount of leave and retain his job; it does not entitle him to any specific classification of leave. *See, e.g., Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 990–91, 994–95 (7th Cir. 2010) (discussing the employee's protected leave without substantive distinctions between FMLA, sick leave, and vacation); *Simpson v. Off. of Chief Judge of Cir. Ct. of Will Cnty.*, 559 F.3d 706, 711 (7th Cir. 2009) (noting the interchangeability of FMLA leave with other forms of leave: "Though Simpson

14

was not on 'FMLA leave' when she was fired, she was on accrued paid sick leave, which an employee may substitute for the leave guaranteed under the FMLA.").

Royston also argues that he was constructively discharged, which, if true, could support an FMLA interference claim. Terminating an employee's employment to prevent him from exercising his FMLA rights is a form of FMLA interference (and a constructive discharge is a form of termination). *See Goelzer*, 604 F.3d at 993; *Simpson*, 559 F.3d at 713. A constructive discharge occurs when an employee is forced to resign because the employee's working conditions, from the standpoint of a reasonable employee, had become unbearable. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). The Seventh Circuit recognizes two forms of constructive discharge. *Id.* The first is when an employee resigns due to discriminatory harassment resulting in working conditions "even more egregious than that required for a hostile work environment claim." *Id.* The second form is "when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Id.* (cleaned up). Under either theory, the standard is very high: the plaintiff must show that the workplace had become objectively "intolerable." *Id.*

A reasonable jury could not find for Royston on either theory of constructive discharge. First, Royston's proffered evidence, even construed as generously as possible, does not establish that he was subjected to egregious harassment that would amount to a constructive discharge. At the summary judgment stage, Royston must "set forth *specific facts* showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (emphasis added). Royston alleges that he retired because he felt so

15

harassed and beleaguered at work over his use of FMLA leave that he felt retirement was his only option. PSOAF ¶¶ 29–30, 38–39; Pl's. Respl DSOF ¶¶ 33–34. But he was unable to give any specifics about this alleged harassment at work: he could not remember a single comment, incident, or perpetrator. Pl's. Resp. DSOF ¶ 35. Vague assertions of feeling harassed are not enough to go to trial.

Nor has Royston presented evidence to suggest that the Postal Service had signaled that he would soon be fired. Indeed, he took at least 11 days of approved sick leave after filing his EEO grievance. DSOF ¶ 26. And there is no record whatsoever of any discipline, reprimand, or suspension against him, either in 2017 when he retired or at any other time. DSOF ¶ 31. The vague testimony about feeling harassed cannot support this second theory of constructive discharge any more than it can support the first.

### 2. Lack of Prejudice

Even assuming, for the sake of argument, that misclassifying Royston's leave as non-FMLA leave was a violation of his FMLA rights, he has not shown any prejudice resulting to him from this action by the Postal Service. As already discussed, Royston was never disciplined for taking leave or requesting leave. DSOF ¶ 31. According to Royston, he still had around 1,300 hours of sick leave left when he retired. PSOAF ¶¶ 3, 18. He even took additional leave after he filed his grievances and after the union resolved the grievance, and he has presented no evidence to suggest that he had any problems with taking this leave. DSOF ¶ 26, Pl's. Resp. ¶ 26. He has not alleged that he missed any of his father's appointments as a result of the

misclassifying or supposed denial of his leave requests. He was paid for all four days of leave at issue. True, for one of those days the payment was late, but he has not adequately offered any evidence that the delay in payment caused him any harm. The vague statement that Royston fell behind on bills and mortgage, supported only by his original EEO Complaint, is not specific enough to create a dispute of material fact on this point. PSOAF ¶ 21. Obviously, falling behind on bill and a mortgage are the types of harm that can result in late compensation, but Royston offers nothing to connect those general problems to the specifics on the late payment for one day's work.

Royston also argues that he was prejudiced when the Postal Service switched his sick leave to annual leave. Pl's. Br. at 7, citing PSOAF ¶ 18. But again, he presents no concrete, specific facts about *how* this alleged action prejudiced him. In his deposition, Royston generally explained that when he was forced to use annual leave instead of sick leave, his vacation time was being taken away from him. Royston Dep. 84:12–85:9. But the only specific example he cites of when he believes he was wrongfully denied annual leave dates back to Thanksgiving of 2016, and his testimony on that date is confusing and conflicting. *Id.* 85:13–89:21. It also falls outside the scope of the Complaint in this case. And he has not presented evidence to link that alleged denial of leave (which is contested by the defense) to his prior use of FMLA, which at that point he had used only for his own heart issues, at least on the record now before the Court.

17

It is worth noting that Royston's Statement of Additional Fact gestures at a much vaster universe of leave denial and withheld pay than is reflected in the record. PSOAF ¶¶ 7, 20. Royston claims he was denied over 100 hours of sick leave dependent care (SLDC) between 2015 and 2017 and that he was not paid at all for 50–100 hours. *Id.* But this claim cannot be credited at the summary judgment stage. The only evidence to support this assertion is his deposition testimony, in which he made general, sweeping statements estimating the amount of leave that he believes he was denied. Royston Dep. 100:9–101:612. Of course, deposition testimony *can* (and often does) create a dispute of material fact—if it includes concrete evidence based on the deponent's personal knowledge. But Royston does *not* present specific facts, and at summary judgment, after the parties have engaged in discovery and litigated the case for three years, specific facts are required. Consider it this way: if Royston were to take the stand at trial and testify as he did in his deposition on this point, the testimony would be disallowed or stricken, because it is overly broad and lacks foundation. The only specific factual assertions presented by Royston are about the four days discussed earlier, which do not support an FMLA interference claim for the reasons previously explained.

Royston has not established a dispute of material fact sufficient to sustain a claim of FMLA interference. The claim must be dismissed.

### B. FMLA Retaliation

The FMLA also prohibits employers from "retaliating against an employee that exercises or attempts to exercise FMLA rights." *Pagel*, 695 F.3d at 631 (citing 29

18

U.S.C. § 2615(a)(2)). To win on a retaliation claim under the FMLA, the employee must show that "(1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action." *Pagel*, 695 F.3d at 631. Adverse actions are relatively broadly defined for retaliation purposes: "Materially adverse actions are *not* limited to employment-related activities but include any actions that would dissuade a reasonable employee from exercising his rights under the FMLA." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008) (emphasis added) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). As for the causation element, that can be established under either the direct or the indirect method of proof. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012). The direct method requires Royston to present evidence that his employer "intended to punish [him] for requesting or taking FMLA leave." *Id.* Alternatively, he can "try to prove retaliatory intent indirectly by showing that [he] was performing [his] job duties satisfactorily but was treated differently from similarly situated employees who did not request FMLA leave." *Id.* Royston is unable to show either an adverse action, or retaliatory intent behind any of his former employer's actions against him.

### 1. Adverse Action

First up is the adverse action requirement. Because the standard in the retaliation context is relatively lenient, an action by the Postal Service that did not violate Royston's FMLA rights or prejudice him could still, conceivably, have risen to the

19

level of a *retaliatory* adverse action if it was irksome enough to discourage a reasonable employee from exercising FMLA rights. But Royston has not presented evidence of that sort of action. Again, the only properly alleged adverse actions in this case relate to four dates in early 2017. On the record before the Court, the Postal Service's handling of those leave requests did not in fact dissuade him from exercising his FMLA rights. Royston encountered a perhaps annoying amount of red tape in attempting to take his FMLA leave, but he was able to access a grievance process that resulted in his being paid for all four days at issue. True, his payment for January 17, 2017 was delayed, and he argues that delayed payments harmed him. Pl's. Br. at 10–11.[12] But a delayed payment is generally speaking only an annoyance, not an adverse employment action, including in the retaliation context. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301 (7th Cir. 2004). Even if Royston had never received the pay, the loss one day of pay is not significant enough to rise to the level of an adverse employment action. *See Rhodes v. Ill. Dep't. of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004) (holding that the loss of a full day of pay, seen in the context of long-term employment, is not an adverse action), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). In the absence of any additional facts showing that the delay in payment affected Royston, it cannot qualify as an adverse employment action. As already explained, Royston's vague statements

---

[12]This part of Royston's brief actually focuses more on alleged missing and delayed payments from Thanksgiving 2016, and the alleged 100 hours of denied sick leave dependent care. But as previously explained, those payments are not at issue in this case.

that he fell behind on bills and mortgage are not specific enough to create a dispute of material fact on this point. PSOAF ¶ 21.

## 2. Causation and Retaliatory Intent

Even assuming for argument's sake that Royston had suffered an adverse action, the retaliation claim still would fail because he has presented no evidence of retaliatory intent. Royston argues that Martha Womack, who approved sick leave requests, was on some kind of vendetta against employees properly using FMLA leave. Pl's. Br. at 15; Pl's. Resp. DSOF ¶ 18. But on the record before the Court, Womack had no control over FMLA leave—an office in Greensboro, North Carolina handled FMLA authorizations. DSOF ¶ 10. The record does reflect that Womack was tasked with reducing employees' abuse of sick leave, but this does not equate to a desire to prevent employees from appropriately using FMLA leave. In her April 2019 deposition, Womack was asked about her denial of Royston's FMLA request for January 2017, over two years earlier, and she simply could not remember it, or her reason for denying it. Womack Dep. 35:17–40:19. More importantly, Royston has not presented evidence that she denied his request with the intent to retaliation against him for using FMLA leave. Womack also initially denied his request for March 20, and her stated reason was: "Documentation doesn't support 8 hrs of S/L requested." R. 67-1 at 8, Def's. Exh. 24, Request for Absence 3/20/17. Royston takes issue with Womack's insistence that he provide documentation for an absence shorter than three days, because the Labor Relations Manual suggested that documentation was not always mandatory for absences of that short duration. Pl's. Resp. ¶ 18. But it was

21

Martha Womack's job to ensure employees used sick leave properly, and the record is clear that a supervisor *could* require documentation for short absences. DSOF ¶ 14; Def's. Exh. 11, Manual 513.361, 513.391. Nothing in the record suggests Womack was intentionally retaliating against Royston. Royston cannot show retaliation by the direct method.

Royston offers some evidence and argument about other employees' problems with Womack, apparently to show that she was punishing employees for using FMLA, Pl's. Resp. DSOF ¶ 18, but this is not helpful. If anything, it undermines his claim. As an initial matter, Royston leans heavily on the deposition of Manuel Lazu, who described Womack's violations of an agreement with Lazu's union—of which Royston *was not a member*. R. 75-10, Pl's. Exh. 10, Lazu Dep. at 25:8–10, 70:22–71:5. The fact that Lazu believed Womack violated an agreement with his union has no bearing on Royston's experience. Royston also cites Victor Ford's testimony that "30, 40, [or] 50" employees complained about how Womack handled their leave. PSOAF ¶ 15, citing Ford Dep. 49:9–50:3. But in the cited deposition testimony, Ford also explained that employees had to submit documentation and that resolved their issues, either because they received the leave they requested, or it was denied. Ford Dep. 49:9–50:3. This testimony undermines Royston's suggestion that he was singled out: if Womack was requiring a lot of documentation to grant sick leave, then she was imposing this requirement across the board. What's more, there is no evidence to suggest that this process dissuaded those employees from using FMLA leave. And Royston simply has

not presented competent evidence to suggest that his alleged mistreatment was in any way specific to him or responsive to his use of FMLA.

Royston also has a timing problem for the causation element required for retaliation. He filed his EEO Complaint in May 2017, *after* the denials of his specific leave requests. So the denials cannot have been in retaliation for his attempts to assert his FMLA rights through the EEO process. He filed his *grievances* about the FMLA denials in February and March 2017, and these grievances were direct responses to the alleged adverse actions. Def's. Exhs. 27, 28, 29. But he does not properly present facts suggesting that he faced any adverse actions *after* filing these grievances.[13] Indeed, the grievances produced positive outcomes: the restoration of pay for January 17 and the approval of his March 20 request. And he requested and received at least 11 more days of leave after filing his EEO complaint in 2017.[14]

Finally, any attempt to show retaliatory intent by the indirect method is doomed at the outset by the lack of comparators. Remember that Royston "must show that after taking FMLA leave (the protected activity) he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though

---

[13]In his brief, Royston argues—for the first time—that he was retaliated against in late 2016 and 2017 for an EEO Complaint he filed against Victor Ford on *January 22, 2016*. Pl's. Br. at 6 (citing PSOAF ¶ 11). But that alleged complaint is mentioned nowhere in his Complaint (in this case) or his PSOAF. The brief cites PSOAF ¶ 11, but that paragraph does not support the factual assertion—it cites the 2017 EEO Complaint and Royston's deposition testimony about it. Royston cannot argue that he faced retaliation for a January 2016 complaint that is not supported by the record.

[14]As discussed above, Royston's vague assertions that other requests were denied are insufficient to create a dispute of material fact at this stage.

he was performing his job in a satisfactory manner." *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 951 (7th Cir.2006). Royston has identified three employees who he believes to be similarly situated and were treated better than him by virtue of not having exercised their FMLA rights: Cherie White (Davidson), Luis Mercado, and Henry Lopez. DSOF ¶ 42. But all three also used FMLA leave, so they are not appropriate comparators. *Id.* ¶ 42. Also, Royston has in effect forfeited any argument that he can establish retaliation through the indirect method of proof by failing to develop such an argument in his brief.

## C. Rehabilitation Act

The Postal Service argues that Royston failed to exhaust his administrative remedies for his claims under the Rehabilitation Act, which are for failure to accommodate his disability and for retaliation for requesting a reasonable accommodation. Def's. Br. at 17. In order to bring a claim under the Rehabilitation Act, a plaintiff must first exhaust all administrative remedies. *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (explaining that claims brought under the Rehabilitation Act are subject to the exhaustion requirements outlined in Title VII). This means that Royston "cannot bring claims in a lawsuit that were not included in [his] EEO[] charge." *Id.* (cleaned up). At the same time, a "plaintiff need not allege in an EEO[] charge each and every fact that combines to form the basis of each claim in her complaint." *Id.* (cleaned up). The inquiry is whether "there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint

24

could reasonably be expected to be discovered in the course of the EEOC's investigation." *Id*. at 692.

Because Royston's EEO Complaint made no mention of his disability, the Rehabilitation Act claims must be dismissed for failure to exhaust his administrative remedies. The EEO Complaint form that Royston filled out included a section for "Type of Discrimination You Are Alleging," under which he checked only "Retaliation." R. 67-1 at 56, Def's. Exh. 35, EEO Compl 235. For the dates of the alleged discrimination, he listed only the four dates already discussed, adding without specification, "+ others." *Id*. In a letter attached to his EEO Complaint, Royston discussed at length his *father's* illness and his attempts to take FMLA leave to provide care for his father. *Id*. at 236. There is absolutely no mention of Royston's own illness or disability—the letter is exclusively about his need to take leave to care for his father. *Id*. No one could read the EEO Complaint and find that the Postal Service was alerted to any potential disability claim—whether for direct discrimination or retaliation—through the complaint. The Rehabilitation Act claims thus are dismissed.

### IV. Conclusion

The Postal Service's summary judgment motion is granted in full. The tracking

status hearing scheduled for October 8, 2021, is vacated. Final judgment will be entered.

ENTERED:


      s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2021